1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10          CENTRAL DISTRICT OF CALIFORNIA- WESTERN DIVISION

11

12

13

14

15  J. R.,  by and through his          )     CV 07-1853 SH
    Guardian ad litem,                  )
16                                      )          MEMORANDUM DECISION
              Plaintiff,                )          AND ORDER
17                                      )
              v.                        )
18                                      )
    MICHAEL  J. ASTRUE  Comm.           )
19  Social Security Administartion      )
                                        )
20            Defendant,                )
                                        )
21  _____)

22          The matter before the court for review is the decision of the Commissioner

23  of Social Security denying plaintiff's application for disability benefits.  Pursuant

24  to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the

25  undersigned.  The action arises under 42 U.S.C. §405(g), which authorizes the

26  Court to enter judgment upon the pleadings and the transcript of the record before

27  the Commissioner.  This matter was before this court once before and was

28  remanded to the Administrative Law Judge (hereinafter "ALJ") for further

    consideration.  A.R.208.  After another hearing, the ALJ again denied benefits.

A.R.278.  The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of the record, and the parties have filed a Joint Stipulation.  After reviewing the matter, the Court concludes that the decision of the Commissioner must again be reversed.

The sole issue in this childhood SSI case is whether the ALJ fairly considered the entire record and took into account the child's need for one-on-one assistance when he determined that the child did not suffer from an extreme limitation in the domain of "attending and completing tasks" specified by 20 C.F.R. Sec.416.926.  This section describes six domains of disability; these are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. Sec.416.926b.  A child will be found to have an impairment that functionally equals a listed limitation, and therefore qualifies the child for benefits, if he has a "marked" limitation in two of the domains or an "extreme" limitation in one of them.   20 C.F.R. Sec.416.926a.  An "extreme" limitation is one that interferes very seriously with a child's ability to independently initiate, sustain, or complete activities.  20. C.F.R Sec.416.926e.  Although the label "extreme" is reserved for the most severe limitations, a total inability to function is not required in order to find an extreme limitation.  *Id.*

Plaintiff contends he has an extreme limitation in the domain of "attending and completing tasks."  The regulations state that, in determining a child's limitations in this particular domain, the ALJ should consider how well the child is able to focus and maintain his attention, how well he begins, carries through, and finishes activities, and the ease with which he performs them.  20. C.F.R. Sec.926h.  Because the plaintiff, who is now fifteen years old, has aged considerably since he first applied for benefits at the age of six, this court considers his limitations using the standards for both a school age children (ages six to twelve) and for adolescents (ages twelve to eighteen).

The regulations state that a school age child should be able to focus in a

1  variety of situations, follow directions, organize school materials, focus on details,

2  and complete classroom and homework assignments.  *Id.*  He should be able to

3  change activities without distracting others and sustain attention well enough to

4  participate in group sports, read alone, and complete chores.  *Id.*  Once he becomes

5  an adolescent, he should be able to pay attention to increasingly longer

6  presentations and discussions, maintain his concentration while reading textbooks,

7  and independently plan and complete long-range assignments.  *Id.*  The plaintiff

8  reached the age of twelve in 2004.  While the school reports, teacher reports, and

9  GAF test scores discussed below correspond to the earlier age range, the majority

10 of the plaintiff's therapist reports discussed below correspond to the later age

11 range.

12         In order to assess whether a child has an "extreme" or "marked" limitation,

13 the ALJ must assess all the relevant information which includes, but is not limited

14 to, how much help he needs, his ability to initiate and sustain activities, his ability

15 to function in school, and the effects of medication and other treatments[1].  20

16 C.F.R. Sec.416.926a.  The ALJ must consider all relevant information including

17 signs, symptoms, medical reports, and descriptions of a child's functioning from

18 parents, teachers, and those who know him.  20. C.F.R Sec.416.926e.

19         This court's earlier order remanding this case noted that the ALJ "did not

20 _____

21         [1]The ALJ based his decision in part on the contention that the plaintiff could be helped by

22 medication.  This point was not addressed by either party, however, this court is unconvinced by the

23 ALJ's  reasoning.  Although there are medical progress reports which imply that medication is of

24 some use, there was some evidence of side effects.  The ALJ did  not wholly disregard  that

25 evidence.  The regulations instruct the ALJ to take into account the effects of medication but also

26 instruct the ALJ to take into account their side effects.  20 C.F.R. Sec.924a(9)(I).  From the record,

27 it is unclear how much the medication helped the plaintiff,  and  how serious the side effects  were,

28 and  this court does  not find sufficient evidence in the  record  to consider the medication as a

   determinative factor in its determination.

1    discuss the uncontradicted and significant indication that the plaintiff does indeed

2    require one-on-one assistance" required the ALJ to consider the plaintiff's "clear

3    need for one-on-one support" in subsequent proceedings.  A.R. 281.  The

4    regulations recognize that while "a structured or supportive setting may minimize

5    signs and symptoms of [a child's] impairments(s)," the child's "functional

6    limitations may worsen outside this type of setting."  20 C.F.R. Sec.924b(5)(iv).

7    For that reason, the ALJ must consider whether a child would "continue to function

8    at an adequate level without the structured or supportive setting." *Id.*

9          The Court finds that the ALJ again neglected to consider the evidence as a

10   whole and did not provide sufficient weight to the evidence of the plaintiff's need

11   for one-on-one assistance.  The ALJ found that, although the plaintiff did have

12   problems in the domain of "attending and completing tasks," his problems were

13   "less than marked." A.R.277.  The ALJ found that the "presence or absence of an

14   aide was not the determinative factor affecting his functioning." A.R.276.  Instead,

15   the ALJ found that the plaintiff's problems were due to other factors such as

16   "attention seeking behavior" or stress from life traumas such as abuse by his father,

17   or changing schools.  However, while the ALJ took care to note which periods of

18   decreased functioning corresponded to stressful events, he was not as careful in

19   distinguishing which periods corresponded to times that the plaintiff was receiving

20   one-on-one assistance.

21         The ALJ supported his ruling in part with answers given by the plaintiff's

22   teacher to a Department of Social Services questionnaire in which she was asked to

23   rate the plaintiff's ability to organize work, stick to a play activity, finish things he

24   started, listen, and remain attentive.  A.R.275.  From the five possibilities of

25   "never", "rarely", "sometimes", "often", and "always"; the teacher only selected

26   "sometimes" and "rarely" in evaluating the plaintiff.  *Id.*  Since the teacher tended

27   to select "sometimes" and did not once select "never", the ALJ viewed this

28   questionnaire as evidence that the plaintiff does not have an extreme limitation.  *Id.*

1    By themselves, these answers somewhat support the ALJ's conclusion; however,

2    the teacher also noted that "Jacob is supervised by a S.E. Aide.  The aide stays with

3    him all day.  He is supervised to keep on task."  A.R.80.  Therefore, in light of the

4    fact that the teacher's answers reflected the plaintiff's performance <u>with</u> the help of

5    a one-on-one aide, and that even with this help he can only "sometimes" stay on

6    task, the questionnaire responses contradict the ALJ's finding and support a

7    finding of "extreme" limitation.

8         Another piece of educational evidence discussed by the ALJ is a 2002

9    LAUSD report, which states that the plaintiff had "difficulty sustaining attention to

10   task[s] without one-to-one assistance", "cannot work unless he is supported and

11   encouraged by [a] one-to-one aide", and "does much better with one-to-one

12   learning situations."  A.R.232-34.  Although the report showed that the plaintiff

13   performed acceptably in most academic areas, it added the following caveat: "there

14   does not appear to be a significant discrepancy between ability and achievement,

15   but Jacob was in a one-to-one testing environment."  A.R.234.  The issue is

16   whether or not the plaintiff is able to compete tasks without one-to-one assistance,

17   and it stands to reason that he would do well on a test where he is receiving one-to-

18   one attention.

19        Defendant dismisses the LAUSD  report on two bases.  First, he notes that

20   the plaintiff attended his Resource Specialist Program (hereinafter "RSP") classes

21   without a one-on-one aide.  Joint Stip. 9.  This point is addressed directly by the

22   regulations which state that "[G]ood performance in a special education setting

23   does not mean that [a child is] functioning at the same level as other children [his]

24   age who do not have impairments."  20 C.F.R. Sec.924b(7)(iv).  The issue is not

25   whether or not the plaintiff, whose intelligence appears to be average or slightly

26   better (A.R.271-72), needs a one-on-one aide in a special education setting.  The

27   issue is whether or not he needs one-on-one assistance in the regular classroom

28   setting that more appropriately suits his intelligence.

1    Second, the defense points out that the LAUSD report noted that the
2    plaintiff completed only <u>math</u> assignments with one-on-one assistance.  The
3    defense then infers that his one-on-one needs were limited to math assignments.
4    Joint Stip. 9.  As noted above, the report is full of language indicating that the
5    plaintiff has a general need for one-on-one assistance and, for that reason, this
6    court cannot draw the same inference.  On the contrary, this report, which advises
7    one to take into account any assistance that the plaintiff is receiving in evaluating
8    his performance, clearly indicates that he needs one-on-one assistance for much, if
9    not most, of his schoolwork.  This undermines the ALJ's finding of a "less than
10   marked" limitation, and instead supports a finding of an "extreme" limitation.

11        The defense also points to a 2001 psychological evaluation which states that
12   the claimant's "concentration and attention span were mildly diminished."
13   A.R.175.  This Court takes note of that evidence but, in light of totality of the
14   evidence, this court does not place much weight on that single sentence in a five
15   page report that nowhere else discusses concentration and attention.

16        The Plaintiff asks this court to place considerable weight on his extremely
17   low scores on the General Assessment of Functioning (hereinafter "GAF") test.
18   The ALJ acknowledged the extremely low scores but dismissed them as signs of
19   "unusual stress" such as changing schools, abuse by his father, or having his
20   brother taken away from him.  A.R.270.  The plaintiff is a victim of serious abuse
21   and certainly underwent stress during the three year period for which there are
22   scores.  On the other hand, each year's score is worse than the last.  Taken as a
23   whole, they portray a child whose condition deteriorated over three years, and are
24   not easily explained by short term responses to stressful situations.  The plaintiff
25   was first tested in 2002 and received GAF score of 43 (out of 100).  A.R.472.  This
26   score corresponds to "[s]erious symptoms (eg. Suicidal ideation, severe
27   obsessional rituals, frequent shoplifting) OR any serious impairment in social,
28   occupational or school functioning (e.g. no friends, unable to keep a job)."

1    APPENDIX.  In 2003, his score dropped below 40, and by 2004 it had deteriorated

2    to 28.  A.R.418.  A score of 28 is characterized by behavior that is "considerabl[y]

3    influenced by delusions or hallucinations OR serious impairment in

4    communication or judgment (e.g. sometimes incoherent, acts grossly

5    inappropriately, suicidal preoccupation) OR inability to function in almost all areas

6    (e.g. stays in bed all day, no job, home, or friends)."  Joint.Stip.Appendix.  The

7    score of 28 points to an "extreme" disability and, because of the clear downward

8    trend, this court is not convinced by the ALJ's contention that the score can be

9    explained away by situational stress.

10         The ALJ supported the "stress" hypothesis with examples of times when the

11   plaintiff had higher levels of functioning (and presumably was undergoing less

12   stress).  He cited therapy sessions in which the plaintiff was able to focus and

13   successfully work for tokens.  A.R.281.  However, he neglected to note the many

14   prior and subsequent sessions in which the plaintiff was unable to earn tokens.

15   *E.g.*, A.R.373,392.  He noted that the plaintiff occasionally earned A's and B's, yet

16   later dismissed his D's and F's.  A.R.269.  The record for this time also contains

17   numerous examples of disruptive behavior (*E.g.,* A.R.363,373) and trouble

18   focusing and concentrating (*E.g.,* A.R.374,376).  The regulations warn against

19   selective analysis of the evidence, and recognize that a child's "level of functioning

20   may vary considerably over time" and that the ALJ must "take into account any

21   variations in [his] level of functioning to determine the impact [on his] ability

22   function over time." 20 C.F.R. Sec. 924(8)(v).

23         Moreover, much of the evidence of high functioning discussed by the ALJ

24   corresponds to times when the plaintiff was receiving one-on-one assistance.  For

25   example, the ALJ notes that the GAF test that yielded a score of 28 was taken in

26   May of 2004, four months after an allegedly stressful change of schools, and that

27   his psychiatric condition improved shortly thereafter; however, he fails to mention

28   that May 2004 also corresponds with the end of the last school year before he

began receiving more intensive one-to-one attention through home schooling (A.R.271). In fact, most of the examples of high functioning correspond to the period after the Fall of 2004; a period during which he was being home schooled. Even if the plaintiff showed improvement during this period, that improvement alone does not undermine a finding of an extreme limitation. Home schooling allowed the plaintiff to receive the one-on-one help that he required. At home he was able to complete the assignments given to him by his school teacher with the benefit of his mother's constant supervision, which appears to have been superior to the one-on-one attention the school gave him. *Id.* Prior to 2004, the plaintiff's one-on-one support was often interrupted because of staffing shortages at school. A.R.488. At home, those limitations were avoided.

Lastly, the ALJ found that the testimony of the plaintiff's mother is not credible. This court defers to the ALJ and does not overturn that determination. However, in light of the considerable evidence provided by reports from the plaintiff's teachers, the school district and his therapists, his mother's testimony and her responses to questionnaires are not determinative in evaluating the plaintiff's limitations.

The Court does not find any support in the record for the contention that Jacob does not need one-on-one supervision. Furthermore, the court will not subject the plaintiff to yet another round of hearings, and finds that the he has an extreme limitation in the domain of "attending to and completing tasks."

For the foregoing reasons, the decision of the Commissioner is reversed and benefits are  awarded to the plaintiff.

Date: <u>March 4, 2008</u>

_____
/ s /

STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE

- 8 -